Andrew Rozynski (Pro Hac Vice to be Filed)
**EISENBERG & BAUM, LLP**
24 Union Square East, Penthouse
New York, NY 10003
Telephone No. 212-353-8700
Facsimile No. 212-353-1708
E-mail: arozynski@EandBLaw.com

William A. Richards #013381
Jesse Ritchey #034650
**RICHARDS & MOSKOWITZ PLC**
1850 N. Central Avenue, Suite 2010
Phoenix, Arizona 85004
Telephone No. 602-595-7800
Facsimile No. 602-595-7800
E-mail:  brichards@RMazlaw.com
        jritchey@RMazlaw.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| The Estate of Dennis Bookshnis, by and through Pamela Lorenz on behalf of herself as survivor of Dennis Bookshnis; Rosalyn Christensen, an individual, | Case No. |
| | **COMPLAINT** |
| Plaintiffs, | |
| v. | |
| Yuma Regional Medical Center, | |
| Defendant. | |

Plaintiffs, the Estate of Dennis Bookshnis ("Dennis") and Rosalyn Christensen ("Rosalyn") (collectively "Plaintiffs"), bring their respective claims against Defendant Yuma Regional Medical Center ("Yuma Regional," "hospital," or "Defendant") as follows:

**THE PARTIES**

1.      Plaintiff Estate of Dennis Bookshnis is the probate estate of Dennis Bookshnis. The Estate is managed and operated by Pamela Lorenz acting as Dennis' Personal Representative.

2.      Dennis was a profoundly deaf individual who communicated primarily in American Sign Language ("ASL"). Dennis was a resident of the State of Washington at all times relevant to this Complaint. Dennis was a patient at Yuma Regional and was denied reasonable accommodations for his disability despite repeated requests to facilitate effective communication between himself, Rosalyn (his daughter), and Yuma Regional's employees, staff, and independent contractors during his medical treatment in January 2020.

3.      Plaintiff Rosalyn is the daughter of Dennis and is not deaf herself, but was Dennis' companion throughout his medical treatment in January 2020. Rosalyn was a resident of the State of Washington at all times relevant to this Complaint. Rosalyn is fluent in ASL. Due to Yuma Regional's actions as described in this Complaint, Rosalyn was coerced to interpret for Dennis against her will and in violation of her legal rights.

4.      Defendant, Yuma Regional, at all times relevant to this Complaint, is a domestic nonprofit Corporation that operates in Yuma, Arizona. Yuma Regional is a medical facility that operates within the Yuma, Arizona regional area, with a principal place of business in Arizona at 2400 S. Avenue A, Yuma, AZ 85364. As a medical facility that serves the general public, Yuma Regional qualifies as a place of public accommodation pursuant to Title III of the Americans with Disabilities Act ("ADA"), 42 USC §§ 12181 et seq. and its implementing regulation, 28 C.F.R. Part 36; section 504 of the Rehabilitation Act of 1973 (29 USC §§ 791 et seq.); and the Arizonans with Disabilities Act ("AzDA"), A.R.S. §§ 41-1492 et seq. Thus, it is subject to the requirements of the ADA, Section 504 of the Rehabilitation Act, and AzDA.

**JURISDICTION AND VENUE**

5.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for claims arising under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 and Title III of the ADA, 42 U.S.C §§ 12181, et seq. In addition, this Court has

RICHARDS & MOSKOWITZ
1850 N. Central Avenue, Suite 2010
Phoenix, Arizona 85004
Telephone 602-595-7800
Facsimile 602-812-7995

2

supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

6.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the acts and omissions giving rise to the causes of action asserted herein occurred in this District.

## PLAINTIFFS SOUGHT TREATMENT AT YUMA REGIONAL AND MET DISCRIMINATION

7.     In early January 2020, Dennis and Rosalyn were staying in Yuma, Arizona as part of a long-anticipated family vacation.

8.     On the morning of January 11, 2020, while enjoying time with his family, Dennis began experiencing debilitating pain focused in his hip.

9.     Worried for her father's health, Rosalyn called emergency services for assistance.

10.     Upon arriving to the scene, emergency medical technicians with Rural Metro Ambulance Services evaluated Dennis, determined that they were unable to provide appropriate treatment at the scene, and opted to transport Dennis and Rosalyn to Yuma Regional.

11.     At approximately 12 p.m., Dennis and Rosalyn arrived at Yuma Regional for treatment. And, as paramedics wheeled Dennis into the hospital, Rosalyn immediately sought out Dennis' attending nurse.

12.     Rosalyn informed the attending nurse that Dennis was profoundly deaf and partially blind and would require live in-person interpretive services for effective communication.

13.     The nurse, however, told Rosalyn that Yuma Regional did not, and would not, provide live in-person interpretive services. Instead, the nurse informed Rosalyn that Dennis' only option was Video and Remote Interpreting ("VRI") services.

14.     VRI is a video telecommunication service that uses devices such as web cameras or videophones to provide sign language or spoken language interpreting services through a remote or offsite interpreter.

15.     VRI commonly suffers from issues diminishing its effectiveness, ranging from connectivity disruptions caused by inadequately maintained technology and insufficient internet service to delays due to an insufficient number of available interpreters. VRI can also

RICHARDS & MOSKOWITZ
1850 N. Central Avenue, Suite 2010
Phoenix, Arizona 85004
Telephone 602-595-7800
Facsimile 602-812-7995

be difficult to understand for patients with various medical infirmities. Because of these issues, VRI does not constitute an effective means of communication for some deaf and hard of hearing patients.

16.     Upon information and belief, Yuma Regional's staff is not properly trained regarding how to utilize or maintain VRI systems or fix malfunctioning VRI systems.  Upon information and belief, this lack of training results in significant delays and failures to communicate effectively with deaf patients and their companions in critical medical care situations. As a result of these delays and failures by Yuma Regional's staff, deaf and hard of hearing patients, including Dennis, received care and service that was objectively substandard and that was not equal to the care and service provided to hearing patients and hearing companions of patients.

17.     For Dennis, VRI was not an effective form of communication because Dennis was partially blind in his right eye, resulting in difficulty seeing, diminished depth perception, and the inability to see or understand an interpreter on the VRI system.

18.     Rosalyn explained to Yuma Regional that VRI was not an effective means of communication for Dennis because of his infirmity. The attending nurse responded that she would ask her superiors at Yuma Regional if live interpreting services could be made available for Dennis.

19.     Upon information and belief, the nurse requested in-person interpreting services for Dennis from her superiors at Yuma Regional.

20.     Upon information and belief, Yuma Regional's agents with authority to approve this request summarily rejected Dennis' and Rosalyn's requests for live in-person interpretive services.

21.     After the nurse left to request live in-person interpretive services, the attending physician, Dr. Devonne Peace, began his initial examination of Dennis. During that examination, Yuma Regional did not provide either VRI or in-person interpretive services.

22.     Dennis underwent Dr. Peace's examination without the benefit of any interpretive services.

4

RICHARDS & MOSKOWITZ
1850 N. Central Avenue, Suite 2010
Phoenix, Arizona 85004
Telephone 602-595-7800
Facsimile 602-812-7995

23.     As a result, throughout the initial examination, Dennis was unable to effectively communicate with Dr. Peace or provide consent.

24.     During that examination, Dennis was provided objectively substandard care, which was not equal to the care and service provided to hearing patients.  He was not able to effectively participate in or consent to his evaluation, diagnosis, or treatment, or do so on equal terms as Yuma Regional's hearing patients.

25.     Following the examination, Dr. Peace ordered CAT scans of Dennis' right hip.

26.     Yuma Regional's staff then took Dennis to perform a CAT scan. Due to ineffective communication, Dennis had no idea what course of treatment he was undertaking or where Yuma Regional's staff was taking him.

27.     Yuma Regional officials asked Rosalyn to stay behind in the hall while Dennis' right hip was being scanned.

28.     Rosalyn again asked Yuma Regional's staff how they planned to communicate with Dennis. The staff indicated initially they did not understand the premise of her question, until Rosalyn explained once more that Dennis was profoundly deaf and needed live interpretive services.

29.     Rosalyn further explained that VRI systems would not work for Dennis because he was partially blind in his right eye.

30.     After this explanation, Yuma Regional's staff indicated they understood the issue. However, instead of ordering a live in-person interpreter for Dennis, Yuma Regional's staff asked that Rosalyn explain to Dennis that hospital staff was moving him to a different room, would transition him into a different bed, and would take scans of his pelvis and right leg.

31.     Given no other viable option, Rosalyn complied and interpreted for her father.

32.     Using Rosalyn's ability to speak ASL was inappropriate because she was neither a willing interpreter nor was she capable of rendering impartial or effective communication.

33.     Yuma Regional's actions in enlisting Rosalyn's assistance to interpret for her father were improper. Instead of properly treating Rosalyn like a member of the patient's family,

RICHARDS & MOSKOWITZ
1850 N. Central Avenue, Suite 2010
Phoenix, Arizona 85004
Telephone 602-595-7800
Facsimile 602-812-7995

who was understandably fearful for her father's safety, Yuma Regional forced Rosalyn to work as an unpaid interpreter for Dennis at a time when she and her father were under great distress.

34.     At approximately 1:40 p.m. on January 11, 2020, Yuma Regional's administrative representative approached Dennis to request information regarding insurance coverage.

35.     The representative was unaware that Dennis was profoundly deaf, and as a result, Dennis could not understand her questions.  This shows that Yuma Regional staff did not make proper efforts to inform staff who would interact with Dennis of his disability and need for aids and services for effective communication.

36.     Unable to communicate directly with Dennis, the administrative representative asked Rosalyn for the insurance information.

37.     Rosalyn used the opportunity to, again, inform Yuma Regional of the need for live in-person interpretive services because Dennis was blind in his right eye. However, when it became clear that effective interpretive services would not be provided, Rosalyn interpreted for her father and provided the administrative representative Dennis' social security number and Medicare information.

38.     After the incident, the administrative representative informed Rosalyn that she would let the Unit Secretary know that Dennis needed a live in-person interpreter.

39.     Upon information and belief, the Unit Secretary was informed of this needed accommodation, but Yuma Regional rejected the request.

40.     After the administrative representative left the room, Rosalyn took the opportunity to comfort Dennis. At this point, Dennis had endured hours of diagnosis and treatment without effective communication.

41.     Sometime later, a nurse approached Dennis and Rosalyn to explain that Yuma Regional had rejected their request for a live in-person interpreter. She further explained that Dennis would either need to use the VRI (a system ineffective for Dennis) or forgo interpretation entirely.

42.     In response to this unacceptable choice, Rosalyn asked for the contact information for the Yuma Regional's head administrator.

6

RICHARDS & MOSKOWITZ
1850 N. Central Avenue, Suite 2010
Phoenix, Arizona 85004
Telephone 602-595-7800
Facsimile 602-812-7995

43.     The nurse provided Rosalyn the contact information.

44.     Shortly thereafter, Rosalyn called the Administrator and left a voice mail.

45.     In the voice mail, Rosalyn explained that Dennis was profoundly deaf and could not understand VRI because he was partially blind in one eye.

46.     Rosalyn further explained that the hospital had an obligation to provide interpretive services under both federal and state law, and that she had no desire or legal obligation to provide interpretive services for her father.

47.     Throughout the voice mail, Rosalyn stressed the need for live in-person interpretive services.

48.     At approximately 3:00 p.m. on January 11, 2020, the lead "charge" nurse that would be taking care of Dennis entered the room. He introduced himself and asked if Dennis had any questions.

49.     Rosalyn explained, yet again, that Dennis required live in-person interpretive services for effective communication.

50.     The charge nurse stated that he had contacted his "higher ups" and they explained that Dennis could only use the VRI for interpreter services.

51.     The nurse further stated that Yuma Regional had "sent out a page" to request interpreter services and no one was available.

52.     Upon information and belief, Yuma Regional did not "sen[d] out a page" or request interpretive services from any Interpretive Service Agency.

53.     Suspecting that Yuma Regional had not contacted any agency, Rosalyn pressed the charge nurse and asked what he meant and which interpretive agencies Yuma Regional had contacted.

54.     When pressed about how it was possible that no interpreter agency had anyone available and willing to come to Yuma, the charge nurse clarified his statement.

55.     He confessed that the hospital had merely paged "all the charge nurses" to inquire if any knew sign language.

56.     Rosalyn explained that the Americans with Disabilities Act required Yuma

7

RICHARDS & MOSKOWITZ
1850 N. Central Avenue, Suite 2010
Phoenix, Arizona 85004
Telephone 602-595-7800
Facsimile 602-812-7995

Regional to provide live, in-person interpreter services to Mr. Bookshnis.

57.    When presented with this information, the charge nurse merely shrugged his shoulders.

58.    Rosalyn then asked how Yuma Regional intended to communicate with Dennis.

59.    In response to the question, the charge nurse gestured to indicate that Rosalyn would have to provide the necessary interpreter services.

60.    Shortly after this interaction, Dr. Peace entered the room and explained that Dennis' hip was dislocated, and they would need to perform a procedure to put his hip back into the socket.

61.    Dr. Peace further explained, that if the procedure were unsuccessful they would be forced to operate.

62.    None of this information was conveyed to Dennis through a live in-person interpreter or VRI.

63.    Instead, Yuma Regional requested Dennis' family, namely Rosalyn, explain the proposed treatment and obtain his consent.

64.    Having no other choice, Rosalyn obliged.

65.    Over the next two hours, Yuma Regional's staff forcefully attempted to put Dennis' hip back into the socket.

66.    This event was so jarring that Rosalyn broke down in tears. However, she could not leave because she was forced to act as Dennis' interpreter as a result of Yuma Regional's refusal to provide in-person interpretive service.

67.    Unfortunately, the staff's attempts to relocate Dennis' hip were unsuccessful so hospital staff returned him to the examination room.

68.    Once in the examination room, Yuma Regional's staff started asking Dennis questions, which he was unable to understand or answer.

69.    At this point, Rosalyn entered the examination room. And, upon finding staff ineffectively communicating with her father once again, she proceeded to explain as she already

8

had numerous times that Dennis could not effectively communicate with Yuma Regional's staff because he was profoundly deaf and could not use VRI due to vison impairments.

70. Yuma Regional's staff yet again required Rosalyn to interpret for her father.

71. Shortly after, the orthopedic surgeon entered the examination room.

72. The surgeon explained that if further attempts to reinsert the hip were unsuccessful, the hospital would transfer Dennis to Phoenix, Arizona for surgery.

73. Rosalyn asked the surgeon to procure an in-person interpreter to explain the situation to Dennis, as the hospital was legally obligated to do.

74. For the first time since their arrival at the hospital, Yuma Regional provided a rationale for their unwillingness to provide a live in-person interpreter when the surgeon stated that "the hospital didn't have the resources" to provide an interpreter.

75. Yuma Regional's staff then attempted, for the final time, to relocate Dennis' hip, again without providing him effective communication.

76. This attempt was unsuccessful.

77. At approximately 9:00 p.m. on January 11, 2020, hospital staff returned Dennis to his room.

78. Once back in his room, hospital staff again requested that Rosalyn interpret for her father so that staff would be prepared for the night shift.

79. Throughout the night, Yuma Regional's staff treated Dennis, but never effectively communicated or interacted with him.

80. Since his arrival at Yuma Regional, Dennis was unable to communicate with his caregivers and participate in his own healthcare decisions like a hearing patient. Moreover, Dennis was subjected to painful treatment without effective communication or understanding the gravity of the treatment. And he and his daughter Rosalyn were forced to endure frustration, anger, stress, anxiety, fear, confusion, and humiliation as their repeated pleas for basic compliance by Yuma Regional with Dennis's legal rights to effective communication and to be free of unlawful discrimination were denied outright.

RICHARDS & MOSKOWITZ
1850 N. Central Avenue, Suite 2010
Phoenix, Arizona 85004
Telephone 602-595-7800
Facsimile 602-812-7995

9

RICHARDS & MOSKOWITZ
1850 N. Central Avenue, Suite 2010
Phoenix, Arizona 85004
Telephone 602-595-7800
Facsimile 602-812-7995

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## YUMA REGIONAL CONTINUED IGNORING ITS LEGAL OBLIGATIONS INTO A SECOND DAY

81.     On January 12, 2020, at approximately 8:00 a.m., Rosalyn left her father's room to prepare for his transport to Phoenix.

82.     Prior to leaving, Rosalyn again asked for in-person interpreter services.

83.     She was told, yet again, that Yuma Regional would not provide in-person interpreter services.

84.     A single staff member offered to call the hospital's patient advocate, but this effort failed to procure an interpreter.

85.     Rosalyn then asked if Yuma Regional staff would please call her before her father was released so she could travel with him.  After Yuma Regional staff agreed, Rosalyn left the hospital.

86.     Upon information and belief, Yuma Regional staff continued to treat Dennis despite their inability to effectively communicate with him, ignoring their obligations to effectively communicate with their patient and providing Dennis substantially substandard care compared to his hearing counterparts.

87.     Upon information and belief, Yuma Regional staff prepared Dennis for his departure for Phoenix without ever explaining to him what was occurring or gaining his approval or acceptance.

88.     At approximately 3:00 p.m., Yuma Regional's staff called and informed Rosalyn that Dennis would depart at 3:30 p.m.  After rushing back to the hospital in a panic, Rosalyn arrived just in time to accompany her father to Phoenix.

89.     Dennis was in Yuma Regional's care for over 27 hours and at no point during his admittance did Yuma Regional provide the aids or services Dennis needed for effective communication or attempt to comply with its legal obligations to him given his disability.

90.     Instead, Yuma Regional conscripted Rosalyn and improperly required her to provide some interpreter services.

91.     This conscription was inappropriate and in violation of federal and state law.

10

92.    Throughout his admission, Yuma Regional subjected Dennis to numerous treatments without providing any effective means of communication with him.

93.    Dennis was in agonizing pain throughout this period and was unable to understand what was happening or to ask for an explanation or help like a hearing patient.

94.    He was frustrated, confused, and in pain.

95.    Upon information and belief, Yuma Regional staff never contacted anyone outside of the hospital to inquire about interpreter services. Yuma Regional never sought services from any interpreter in its community, or in the nearest cities of San Diego, Tucson, or Phoenix.

96.    Upon information and belief, there were ASL interpreters in San Diego, Phoenix, and Tucson that were available and willing to travel to Yuma to interpret for Dennis.

97.    Each of these locations is less than 250 miles from Yuma.

98.    Those available interpreters would have arrived in time to provide effective communication, and especially prior to Dennis' hip relocation procedures and prior to the decision to relocate him to Phoenix, providing him the ability to communicate and understand the procedures and treatment plan.

99.    Yuma Regional's failure to provide a qualified sign language interpreter made Dennis' treatment and experiences more difficult and caused him additional harm because it prevented effective communication between Dennis and Yuma Regional's staff.

100.    As a result of Yuma Regional's failure to ensure effective communication with Dennis, he received services that were objectively substandard and inferior to services the hospital provided to patients who can hear.

101.    Due to Yuma Regional's refusal to provide effective communication, Dennis did not understand critical information about his diagnoses, prognoses, medications, and/or treatment options and lacked a meaningful and complete understanding of the risks and benefits thereof.

102.    Yuma Regional intentionally discriminated against Dennis and Rosalyn and acted with deliberate indifference to Dennis' communication needs, causing both of them to endure

11

1   humiliation, fear, anxiety, and emotional distress.

2       103.    The cost associated with providing Dennis live ASL interpreter services would

3   have been easily affordable to Yuma Regional and would have had no material financial impact

4   whatsoever on Yuma Regional.  Yuma Regional has no burden argument or defense, or any

5   other defense to the claims asserted below.

6       **CLAIM 1: VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT**

7       104.    Plaintiffs repeat and reallege all preceding allegations of this Complaint in

8   support of this claim as if set forth fully herein.

9       105.    At all times relevant to this action, Title III of the Americans with Disabilities Act

10  (ADA), 42 U.S.C. § 12181, *et seq.* has been in full force and effect and has applied to

11  Defendant's conduct.

12      106.    At all times relevant to this action, the United States Department of Justice

13  regulations implementing Title III of the ADA, 28 C.F.R. Part 36, were in full force and effect

14  and applied to the Defendant's conduct.

15      107.    At all times relevant to this action, Dennis has been substantially limited in the

16  major life activities of hearing and speaking. Accordingly, he is considered an individual with

17  a disability as defined under the ADA, 42 U.S.C. § 12102(2).

18      108.    At all times relevant to this action, Dennis has also been substantially limited in

19  the major life activity of seeing as defined under the ADA, 42 U.S.C. § 12102(2).

20      109.    Defendant owns, leases, and/or operates a place of public accommodation as

21  defined under Title III of the ADA, 42 U.S.C. § 12181(7)(F).

22      110.    Title III of the ADA provides that "[n]o individual shall be discriminated against

23  on the basis of disability in the full and equal enjoyment of the goods, services, facilities,

24  privileges, advantages, or accommodations of any place of public accommodation by any

25  person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C.

26  § 12182(a).

27      111.    Title III of the ADA defines discrimination to include denying participation or

28  offering  unequal  or  separate  benefits  to  individuals  with  disabilities.  42  U.S.C.  §

RICHARDS & MOSKOWITZ
1850 N. Central Avenue, Suite 2010
Phoenix, Arizona 85004
Telephone 602-595-7800
Facsimile 602-812-7995

12182(b)(1)(A); *see also* 28 C.F.R. § 36.202.

112.    Title III of the ADA further defines discrimination to include "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services . . . ." 42 U.S.C. § 12182(b)(2)(A)(iii).

113.    Pursuant to Title III of the ADA and its implementing regulations it "shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 42 U.S.C. § 12182(b)(1)(E)

114.    Pursuant to Title III of the ADA and its implementing regulations, a public accommodation shall furnish appropriate auxiliary aids and services to ensure effective communication with individual with disabilities. 42 U.S.C. § 12182(b)(2)(A)(iii); 28 C.F.R. § 36.303(b)(1).

115.    Pursuant to Title III of the ADA and its implementing regulations, a public accommodation, in choosing the type of auxiliary aid or service to ensure effective communication, must consider the "method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place." 28 C.F.R. § 36.303(c)(1)(ii).

116.    Pursuant to Title III of the ADA and its implementing regulations, in order to be effective, the type of auxiliary aid or service provided by the public accommodations "must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 36.303(c)(1)(ii).

117.    Based on all of the foregoing allegations confirming the Defendant's treatment and interactions with the Plaintiffs, Defendant discriminated against the individual Plaintiffs on the basis of their disabilities by: 1) denying Plaintiffs an equal opportunity to participate in and benefit from Defendant's goods, services, facilities, privileges, advantages, and/or accommodations, in violation of 42 U.S.C. § 12182(b)(1)(A); 2) failing to ensure adequate and

RICHARDS & MOSKOWITZ
1850 N. Central Avenue, Suite 2010
Phoenix, Arizona 85004
Telephone 602-595-7800
Facsimile 602-812-7995

13

RICHARDS & MOSKOWITZ
1850 N. Central Avenue, Suite 2010
Phoenix, Arizona 85004
Telephone 602-595-7800
Facsimile 602-812-7995

effective communication through the provision of on-site qualified sign language interpreters, in violation of 42 U.S.C. § 12182(b)(2)(A); 3) excluding or otherwise denying equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to Plaintiffs or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association, in violation of 42 U.S.C. § 12182(b)(1)(E); 4) failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation of 42 U.S.C. § 12182(b)(2)(A); and 5) forcing a companion to provide in-person interpretive services for a family member.

118.    As set out above, absent injunctive relief there is a clear risk that Defendant's actions will recur with Plaintiffs and/or additional deaf persons.

119.    Plaintiffs are therefore entitled to injunctive relief, as well as an award of attorneys' fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12188(a)(1) and/or common law.

## CLAIM 2: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT

120.    Plaintiffs repeat and reallege all preceding allegations of this Complaint in support of this claim as if set forth fully herein.

121.    At all times relevant to this action, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 has been in full force and effect and has applied to the Defendant's conduct.

122.    At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, have been in full force and effect and have applied to the Defendant's conduct.

123.    At all times relevant to this action, Dennis had substantial impairment to the major life activities of hearing and speaking within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9), and its implementing regulations at 45 C.F.R. § 84.3(j). Accordingly, he is an individual with a disability as defined under the Rehabilitation Act.

124.    At all times relevant to this action, Dennis also had substantial impairments to the major life activity of seeing within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9),

and its implementing regulations at 45 C.F.R. § 84.3(j).

125.    At all times relevant to this action, Plaintiffs were qualified to receive services through Defendant's facilities.

126.    Upon information and belief, at all times relevant to this action Defendant has received federal financial assistance, including Medicaid reimbursements, and has been principally engaged in the business of providing health care. Therefore, Defendant and its associated medical facilities qualify as a program or activity receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

127.    Pursuant to Section 504, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794.

128.    As set forth in the foregoing allegations about the Plaintiffs' treatment by and interactions with Defendant and its agents and medical personnel operating within its facilities, Defendant has discriminated against and continues to discriminate against the individual Plaintiffs solely on the basis of their disabilities by denying them meaningful access to the services, programs, and benefits the Defendant offers to other individuals, and by refusing to provide auxiliary aids and services necessary to ensure effective communication, in violation of Section 504 of the Rehabilitation Act. 29 U.S.C. § 794.

129.    As set forth in the foregoing allegations about the Plaintiffs' treatment by and interactions with Defendant and its agents and medical personnel operating within its facilities, Defendant further discriminated against the individual Plaintiffs by: 1) failing to ensure adequate and effective communication with Plaintiffs through the specific provision of qualified, in-person sign language interpreters; 2) requiring the Plaintiffs to rely upon ineffective and inadequate means of communication including inadequate VRI systems; and 3) forcing a companion to provide in-person translation services for a family members.

130.    Defendant's violation of its obligations and the Plaintiffs' rights under the Rehabilitation Act and its implementing regulations has caused substantial damages, suffering,

RICHARDS & MOSKOWITZ
1850 N. Central Avenue, Suite 2010
Phoenix, Arizona 85004
Telephone 602-595-7800
Facsimile 602-812-7995

loss and harm to the Plaintiffs, including, without limitation, serious and lasting emotional harm, anxiety, frustration, fear and other serious emotional conditions or symptoms.

131.    As set out above, absent injunctive relief there is a clear risk that Defendant's actions will recur again with Plaintiffs and other deaf patients, their companions and family members.

132.    Plaintiffs are therefore entitled to seek and recover all appropriate compensatory damages for the injuries and losses they sustained as a result of Defendant's discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 29 U.S.C. § 794(a).

133.    Plaintiffs are further entitled to an award of attorneys' fees, costs, and disbursements pursuant to the Rehabilitation Act, 29 U.S.C. § 794(a) and/or common law.

## CLAIM 3: VIOLATIONS OF SECTION 1557 OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT

134.    Plaintiffs repeat and reallege all preceding allegations of this Complaint in support of this claim as if set forth fully herein.

135.    At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"), 42 U.S.C. § 18116 was in full force and effect and applied to the Defendant's conduct.

136.    At all times relevant to this action, Section 1557, 42 U.S.C. § 18116, incorporated the definition of disability in the Rehabilitation Act, 29 U.S.C. § 705(9).

137.    At all times relevant to this action, Dennis had substantial limitations to the major life activities of hearing and speaking, and is an individual with disabilities within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9) and of Section 1557, 42 U.S.C. § 18116.

138.    At all times relevant to this action, Dennis' primary language for communication was ASL and not English; and he had limited ability to read, write, speak, or understand English, and was an individual with limited English proficiency within the meaning of Section 1557, 45 C.F.R. § 92.4.

139.    At all times relevant to this action, Defendant received federal financial assistance, including Medicaid reimbursements, and was principally engaged in the business of

RICHARDS & MOSKOWITZ
1850 N. Central Avenue, Suite 2010
Phoenix, Arizona 85004
Telephone 602-595-7800
Facsimile 602-812-7995

providing health care. Therefore, Defendant is a health program or activity receiving federal financial assistance pursuant to 42 U.S.C. § 18116(a).

140.   Pursuant to Section 1557, "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance . . ." 42 U.S.C. § 18116.

141.   Defendant has discriminated and continues to discriminate against Dennis solely on the basis of their disabilities and their limited English proficiency by denying them meaningful access to the services, programs, and benefits the Defendant offers to other individuals by refusing to provide auxiliary aids and services necessary to ensure effective communication in violation of Section 1557, 42 U.S.C. § 18116.

142.   Defendant discriminated against the Plaintiffs by failing to ensure effective communication through the providing of qualified sign language interpreters on-site.

143.   On information and belief, the refusal to offer on-site ASL interpreter services is as a result of Defendant's policy or practice of prohibiting or impeding the use of on-site qualified sign language interpreters without regard to whether VRI services will provide effective communication.

144.   As set out above, absent injunctive relief there is a clear risk that Defendant's actions will recur again with Plaintiffs and other deaf patients and family members.

145.   Plaintiffs are therefore entitled to seek and recover compensatory damages for the injuries and loss they sustained as a result of Defendant's discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 42 U.S.C. § 18116(a).

146.   Plaintiffs are further entitled to an award of attorneys' fees, costs, and disbursements pursuant to 42 U.S.C. § 18116(a), the Rehabilitation Act, 29 U.S.C. § 794(a) and/or common law.

RICHARDS & MOSKOWITZ
1850 N. Central Avenue, Suite 2010
Phoenix, Arizona 85004
Telephone 602-595-7800
Facsimile 602-812-7995

## CLAIM 4: VIOLATIONS OF THE ARIZONANS WITH DISABILITIES ACT

147.   Plaintiffs repeat and reallege all preceding allegations of this Complaint in support of this claim as if set forth fully herein.

148.   At all times relevant to this action, the Arizonans with Disabilities Act (AzDA), A.R.S. § 41-1492, *et seq*., has been in full force and effect and has applied to Defendant's conduct.

149.   At all times relevant to this action, Dennis had substantial impairment to the major life activities of hearing and speaking and is a qualified individual with a disability within the meaning of the AzDA, A.R.S. §§ 41-1492(6) and (8)(a).

150.   At all times relevant to this action, Dennis also had substantial impairments to the major life activity of seeing.

151.   At all times relevant to this action, Defendant's facilities at which Plaintiffs were served or treated were and are places of public accommodation within the meaning of AzDA, A.R.S. § 41-1492(11).

152.   The AzDA, A.R.S. § 41-1492.02(A), states that "[n]o individual may be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation by any person who owns, leases, leases to others or operates a place of public accommodation."

153.   Discrimination under the AzDA includes any "failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of reasonable modifications in policies, practices or procedures or auxiliary aids and services." A.R.S. § 41-1492.02(G)(3).

154.   As set forth in the foregoing allegations about the Plaintiffs' treatment by and interactions with Defendant and its agents and medical personnel operating within its facilities, Defendant has discriminated against and continues to discriminate against the individual

18

Plaintiffs solely on the basis of their disabilities by denying them meaningful access to the services, programs, and benefits the Defendant offers to other individuals, by failing and refusing to modify the Defendant's policies, procedures and practices regarding reliance on VRI systems and refusal to provide live, on-site sign language interpreters, and by refusing to provide auxiliary aids and services necessary to ensure effective communication, in violation of the AzDA and the Plaintiffs' rights thereunder.

155.    As set forth in the foregoing allegations about the Plaintiffs' treatment by and interactions with Defendant and its agents and medical personnel operating within its facilities, Defendant specifically discriminated against the individual Plaintiffs by: 1) failing to ensure adequate and effective communication with Plaintiffs through the specific provision of qualified, in-person sign language interpreters; 2) forcing companions to provide in-person translation services for family members; and 3) requiring the Plaintiffs to rely upon ineffective and inadequate means of communication including inadequate VRI systems.

156.    Discrimination under the AzDA also includes, "[a] failure to make reasonable modifications in policies, practices or procedures, if these modifications are necessary to afford these goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, unless the entity can demonstrate that making these modifications would fundamentally alter the nature of these goods, services, facilities, privileges, advantages or accommodations." A.R.S. § 41-1492.02(G)(2)

157.    Upon information and belief, Defendant has a policy of only using VRI to communicate with the deaf or hard of hearing.

158.    As set forth in the foregoing allegations about the Plaintiffs' treatment by and interactions with Defendant and its agents and medical personnel operating within its facilities, Plaintiffs requested reasonable accommodations to Defendant's VRI policy and/or Defendant had reason to know of Plaintiffs' disabilities and inability to request an accommodation, and that that Plaintiffs needed a reasonable accommodation, but nonetheless denied Plaintiffs a reasonable accommodation, which resulted in Plaintiffs being harmed.

159.    Defendant's violation of its obligations and the Plaintiffs' rights under the AzDA

19

has caused substantial damages, suffering, loss and harm to the Plaintiffs, including, without limitation, serious and lasting emotional harm, anxiety, frustration, fear and other serious emotional conditions or symptoms.

160.    As set out above, absent injunctive relief, there is a clear risk that Defendant's actions will recur with Plaintiffs and/or additional deaf persons.

161.    Plaintiffs are therefore entitled to seek and recover all appropriate compensatory damages and injunctive relief for the injuries and losses they sustained as a result of Defendant's discriminatory conduct and deliberate indifference as hereinbefore alleged, including as allowed pursuant to A.R.S. § 41-1492.09.

162.    Plaintiffs are further entitled to an award of attorneys' fees, costs, and disbursements pursuant to A.R.S. § 41-1492.09 and/or as otherwise provided at law.

## CLAIM 5: BATTERY

163.    Plaintiffs repeat and reallege all preceding allegations of this Complaint in support of this claim as if set forth fully herein.

164.    Defendant, its agents, and medical personnel operating within its facilities performed medical procedures on Dennis.

165.    Defendant had a duty to provide effective communication of material information to Dennis sufficient to allow for informed consent by him to any procedures performed at Defendant's facilities or by Defendant's agents.

166.    Defendant breached its duty to provide sufficient information for and to obtain informed consent from Dennis.

167.    As conveyed to Defendant prior to his treatment, Dennis required a live ASL interpreter to understand, consent to, or participate in his medical treatment.

168.    Without effective communication, Dennis was incapable of giving informed consent for his medical treatments.

169.    Defendant willfully disregarded Dennis' right to informed consent and nonetheless performed procedures on Dennis.

170.    The procedures performed on Dennis included medical techniques and

20

RICHARDS & MOSKOWITZ
1850 N. Central Avenue, Suite 2010
Phoenix, Arizona 85004
Telephone 602-595-7800
Facsimile 602-812-7995

procedures that caused contact with him, which contact was harmful or offensive as it was not performed with or within appropriate informed consent provided by the patient.

171.    As a result of the Defendant's failure to obtain appropriate informed consent from Dennis, and Defendant's performance of procedures that were not performed with or within appropriate informed consent provided by Dennis caused him to suffer harm and damages.

172.    Dennis is entitled to recover all of his actual, compensatory, consequential and incidental damages resulting from Defendant's wrongful conduct as described herein.

173.    Also, the Defendant's wrongful conduct was extreme, outrageous, malicious, willful and performed with an evil intent or with conscious disregard of the risk of serious harm to Dennis, meaning that Dennis is entitled to recover punitive damages from Defendant in an amount sufficient to punish the Defendant and to deter similarly situated persons or entities from like future conduct.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs respectfully pray that this Court grant the following relief against the Defendant:

A.    Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendant's practices, policies and procedures have subjected Plaintiffs to discrimination in violation of Title III of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, Section 1557 of the Affordable Care Act, and the Arizonans with Disabilities Act;

B.    Enjoin Defendant from implementing or enforcing any policy, procedure, or practice that denies individuals who are deaf or hard of hearing, such as Dennis, meaningful access to and full and equal enjoyment of Defendant's services or programs;

C.    Order Defendant:

      i.    To develop and comply with written policies, procedures, and practices to ensure that Defendant does not discriminate in the future against Plaintiffs and other similarly situated individuals who are deaf or hard of hearing by failing to provide effective communication;

21

RICHARDS & MOSKOWITZ
1850 N. Central Avenue, Suite 2010
Phoenix, Arizona 85004
Telephone 602-595-7800
Facsimile 602-812-7995

ii.      To develop, promulgate, implement and comply with a policy requiring that when a patient or other deaf individual appearing as a companion or family member for a patient requests an on-site interpreter for effective communication, a fully qualified sign language interpreter will be provided as soon as practicable in all services offered by Defendant;

iii.     To develop, implement, promulgate, and comply with a policy to ensure that Defendant will notify individuals who are deaf or hard of hearing of their rights to effective communication under all applicable federal and state laws. This notification will include posting explicit and clearly worded notices that Defendants will provide sign language interpreters, videophones, and other communication services to ensure effective communication with deaf or hard of hearing persons;

iv.      To develop, implement, promulgate, and comply with a policy to ensure, in the event any facility operated by Defendant utilizes a Video Remote Interpreting System ("VRI"), that such system has all functions and characteristics necessary to ensure it provides for effective communication given all the conditions and circumstances present, including without limitation that such system utilizes;  1)  a  high-speed internet connection; 2) a video screen and camera with appropriate size, resolution, position, capture angle, focus, and proximity to the deaf individual; and 3) appropriate audio quality. When necessary for effective communication the equipment must be portable and made available to the patient where the patient is located, preferably in a private room to minimize distractions and maintain confidentiality;

v.       To provide at all times and at all Defendant's medical facilities utilizing VRI systems adequately trained and experienced employees or contractors sufficient to ensure that any VRI systems or related communications equipment or resources are maintained at all times in proper working

22

condition and can be promptly fixed in time to avoid any prejudice or unreasonable delay in patient care or companion communication;

vi.   To develop, implement, promulgate, and comply with a policy to ensure that deaf or hard-of-hearing patients are able to communicate through the most appropriate method under the circumstances, recognizing that VRI is not appropriate in all medical situations;

vii.   To create and maintain a list of ASL interpreters and ensure availability of such interpreters at any time of day or night;

viii.   To train all its employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under the ADA, Section 504 of the Rehabilitation Act, 1557 of the Affordable Care Act and the AzDA;

ix.   To train all its employees, staff, and other agents on a regular basis about how to properly assess when VRI or other alternative means of communication do not provide effective communication for a deaf patient or other deaf and hard of hearing companions or visitors to the Defendant's facilities;

x.   To train its employees, staff, and other agents on a regular basis about Defendant's policies regarding when and how to properly use VRI services (including how to set up the VRI system and how to obtain technical assistance in case of system malfunction or failure) and how to obtain interpreters when requested by deaf or hard of hearing patients or companions;

D.   Award to Plaintiffs:

i.   All appropriate actual and compensatory damages pursuant to Section 504 of the Rehabilitation Act, Section 1557 of the Affordable Care Act, the Arizonans with Disabilities Act, and the common law of Arizona sufficient

RICHARDS & MOSKOWITZ
1850 N. Central Avenue, Suite 2010
Phoenix, Arizona 85004
Telephone 602-595-7800
Facsimile 602-812-7995

23

to fully remedy all damages, suffering, injury and losses caused to Plaintiffs by Defendant;

ii.   To the extent allowed by any applicable law, punitive damages in an amount sufficient to punish the Defendant and to deter similarly situated persons or entities from similar future conduct;

iii.   Reasonable costs and attorneys' fees pursuant to the ADA, Section 504 of the Rehabilitation Act, Section 1557 of the Affordable Care Act and the AzDA;

iv.   Interest on all amounts at the highest rates and from the earliest dates allowed by law;

v.   Any and all other relief that this Court finds just, necessary and appropriate.

## JURY DEMAND

Plaintiffs demand trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

RESPECTFULLY SUBMITTED this 7th day of January, 2022.

RICHARDS & MOSKOWITZ PLC

/s/ William A. Richards
William A. Richards
Jesse R. Ritchey
1850 N. Central Avenue, Suite 2010
Phoenix, AZ  85004

AND

EISENBERG & BAUM, L.L.P.
Andrew Rozynski, Esq.
24 Union Square East, Penthouse
New York, NY 10003
*Attorneys for Plaintiffs*

RICHARDS & MOSKOWITZ
1850 N. Central Avenue, Suite 2010
Phoenix, Arizona 85004
Telephone 602-595-7800
Facsimile 602-812-7995

24